IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WENDY RUPE TRUST,
JOHN FOX, and,
JOYCE FOX

          Plaintiffs,

v.                                     CIVIL ACTION NO.  2:09-cv-01435

CABOT OIL & GAS CORPORATION,

          Defendant.

MEMORANDUM OPINION ORDER

Pending before the Court is Defendant's Motion for Summary Judgment [Docket 43].  For

the reasons stated below, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

*I. BACKGROUND*

This action arises out of a land dispute between John and Joyce Fox, the sole trustees of the

Wendy Rupe Trust (collectively "Plaintiffs"), and the Cabot Oil & Gas Corporation ("Defendant").

Plaintiffs own a 171.63 acre parcel of land located in Logan County, West Virginia.  Plaintiffs leased

this property to Defendant on March 11, 2004, for the purposes of exploring and drilling for natural

gas.  The lease's primary duration was originally scheduled for a term of eighteen months, and this

term was later extended by three months upon mutual agreement of the parties.[1]  Pursuant to the

---

[1] As is fairly typical with oil and gas leases, this lease contains a "thereafter clause," which states:
"This lease shall remain in force for a term of [18 months, later increased to 21] from this date
(called 'primary term') and as long thereafter as oil and gas is produced, or considered produced
under the terms of this lease, in paying quantities from the premises or from land pooled therewith,
(continued...)

terms of the lease, Defendant erected a natural gas well known as "Fox # 1" on the leased property,

and Plaintiffs received a 1/8 royalty interest in that well.

In August of 2005, Plaintiffs were approached by Defendant's representative, Randall

Rexroad, who offered them $10,000 to construct a road across their property in order for Defendant

to access a well on an adjoining tract known as "RAMCO 60-02." Plaintiffs declined Defendant's

offer. Later that month, pursuant to the terms of the lease, Defendant pooled and unitized the Fox

# 1 well with other wells in the area, which reduced Plaintiffs' royalty interest to 1/16. Over a year

and a half later, in April of 2007, Defendant built an access road across Plaintiffs' property in order

to access RAMCO 60-02. Plaintiffs discovered the existence of this road in September of 2008.

On November 9, 2009, Plaintiffs filed suit against Defendant in the Circuit Court of Logan

County. Defendants timely removed to this Court on December 15, 2009, citing diversity of

citizenship as the sole grounds for removal. 28 U.S.C. §§ 1332, 1441. Plaintiffs' amended

complaint in this matter was filed on September 30, 2010, and alleges three causes of action: (1)

trespass; (2) compensation of surface owners for drilling operations; and (3) intentional infliction

of emotional distress. On November 22, 2010, Defendant moved for summary judgment on the

amended complaint. On December 6, 2010, Plaintiffs responded in opposition to Defendant's

motion, and Defendant replied on December 13, 2010. Defendant's summary judgment motion is

now ripe for the Court's review.

---

[1](...continued)
or the premises are used for gas storage purposes as provided in paragraph 7 hereof, or this lease is
maintained in force under any subsequent provisions hereof." (Docket 43-1 at 1.) The parties do
not dispute the continued duration of the lease.

## II. APPLICABLE LAW

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. That rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ. Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, it is well established that the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.*

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of

evidence" in support of the nonmoving party is not enough to withstand summary judgment; the

judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. ANALYSIS

Federal courts sitting in diversity are to apply the substantive law of the state in which they

sit. *Erie R.R. v. Thompkins*, 304 U.S. 64 (1938). Defendant has moved for summary judgment on

two of Plaintiff's causes of action, the common law torts of trespass to real property and intentional

infliction of emotional distress.[2] The Court will address each of Plaintiff's claims in turn.

### A.      Trespass

"Under West Virginia law, to constitute a trespass, the defendant's conduct must result in an

actual, nonconsensual invasion of the plaintiff's property, which interferes with the plaintiff's

possession and use of that property." *Rhodes v. E.I. du Pont de Nemours & Co.*, --- F.3d ----, No. 10-

1166, 2011 WL 1335799, at \*4 (4th Cir. Apr. 8, 2011); *see also Hark v. Mountain Fork Lumber Co.*,

34 S.E.2d 348, 352 (W. Va. 1945) ("Trespass is defined . . . as an entry on another man's ground

*without lawful authority*, and doing some damage, however inconsiderable, to his real property."

(emphasis added)). Accordingly, if an owner has consented to an alleged trespass, "they cannot

---

[2] Although Defendant requested that the Court "enter summary judgment in favor of all claims enumerated in Plaintiffs' Amended Complaint," (Docket 44 at 3), its motion did not directly address Plaintiffs' second cause of action, which alleges entitlement to damages pursuant to the Oil and Gas Production Damage Compensation Act ("Compensation Act"), W. Va. Code § 22-7-1 *et seq.* Moreover, in its reply, Defendant noted several times that Plaintiffs have a proper cause of action under the Compensation Act. (Docket 47 at 3 ("[A]t best Plaintiffs have a cause of action under the Oil and Gas Production Damage Compensation Act.")); (*Id*. at 5 ("Plaintiffs may still have a cause of action for surface damages pursuant to the Oil and Gas Production Damage Compensation Act.")); (*Id*. at 7 ("Plaintiff's *exclusive* remedy lies in the Oil and Gas Production Damage Compensation Act.")). Accordingly, the Court exempts the second count of the amended complaint from its discussion.

recover in an action of tort for the harm resulting from it." *Perrine v. E.I. du Pont de Nemours & Co.*, 694 S.E.2d 815, 846 (W. Va. 2010) (quoting Restatement (Second) of Torts § 892A(1) (1979)). However, consent is not an absolute defense, as "[a] conditional or restricted consent to enter land creates a privilege to do so *only in so far as the condition or restriction is complied with.*" Restatement (Second) of Torts § 168 (1965) (emphasis added); *see generally Food Lion, Inc. v. Capital Cities / ABC, Inc*, 194 F.3d 505, 519 (4th Cir. 1999) (noting, while analyzing the common law of South Carolina, that where the "law of trespass protects the peaceable enjoyment of property . . . [i]t is consistent with that principle to hold that consent to enter is vitiated by a wrongful act that exceeds and abuses the privilege of entry.").

In its opening brief, Defendant argues that its conduct cannot constitute a trespass under West Virginia law because it had lawful authority to enter Plaintiffs' property and construct the road pursuant to the express terms of the lease. Specifically, Defendant points to the language in the lease that grants it the right to build upon Plaintiffs' land "roads, tanks, power stations, telephone lines, and other structures and things thereon as necessary, useful, and convenient." (Docket 43-1 at 1.) Plaintiffs respond by pointing to the lease's addendum, conspicuously omitted from Defendant's discussion, which states that "Lessor and Les[s]ee to agree on access road, drillsite and pipeline locations, not to be unreasonably withheld by Lessor." (Docket 43-1 at 3.) Plaintiffs argue that, as they did not agree to the location of any access roads, Defendant's construction of the road exceeded the scope of permissible activity outlined in the lease and became a nonconsensual, trespassory act.

In its reply, Defendant does not dispute the validity of the addendum[3] or Plaintiffs' legal

theory, but argues instead that it was excused from securing Plaintiffs' agreement because Plaintiffs

violated the addendum when they  "unreasonably withheld" their consent to the road's location,

presumably in the August 2005 meeting of the parties.  Defendant argues:

> Plaintiffs were not to "unreasonably withhold" consent to the location of the access
> road.  However, as the undisputed facts convey, Plaintiffs simply *refused* to agree or
> negotiate the location of the access road; this type of conduct clearly constitutes
> "unreasonable withholding" prohibited by the Addendum, which relieved Cabot of
> any obligation to obtain consent before construction.

(Docket 47 at 3.)  As Plaintiffs breached the lease, Defendant argues, "Cabot therefore had the right

to build the road."  (*Id*.)

The Court finds that there is a genuine issue of material fact as to whether Defendant's

construction of the road exceeded the scope of its permissible activities on the land pursuant to the

terms of the lease.  The plain language of the addendum required both parties to agree on the

location of any access roads, with the caveat that such agreement could not be "unreasonably

withheld" by Plaintiffs.  (Docket 43-1 at 3.)  Indisputably, Plaintiffs did not in fact agree to the

location of the access road constructed by Defendant.  To the extent that Defendant argues that it

was exempted from acquiring Plaintiffs' agreement because they breached the addendum, the Court

simply notes that the circumstances surrounding Plaintiffs' refusal to grant Defendant permission

to build the road at its chosen location are still very much unclear.

Defendant has pointed to absolutely no evidence in support of its blanket statement that the

"undisputed facts" of this case reveal that Plaintiffs "unreasonably withheld" their agreement as to

---

[3] In Defendant's answer to Plaintiffs' amended complaint, it admitted that "an addendum attached
to the lease stipulated that both parties would agree to an access road, drill site, and pipeline
location, not to be unreasonably withheld by John and Joyce Fox." (Docket 36 at 1-2.)

the location of the access road. (Docket 47 at 3.)  The only factual evidence available to the Court

on the "reasonableness" of Plaintiffs' actions is the deposition testimony of Plaintiff John Fox,

wherein he avers that he made a counter-offer after rejecting Defendant's initial proposal for the

location of the road, which seems to belie Defendant's assertion that Plaintiffs refused any

semblance of negotiation.  (Docket 43-1 at 10 (stating that he "agreed to give [Defendant] a

right-of-way for six thousand seven hundred and twenty feet as long as [it] put the well on

[Plaintiffs'] property.")).  According to Fox's deposition, the single meeting with Defendant's agent

in August of 2005 was the first and last time that the subject of an access road was even broached

between the two parties, despite the fact that Defendant did not actually build the road for another

twenty months.  Given the sparse evidence on this issue, and construing the limited available facts

in favor of Plaintiffs, it is impossible for the Court to determine at this juncture whether Plaintiffs

acted "unreasonably" under the contract in refusing to agree to Defendant's initial proposal to build

the access road.[4]

---

[4] Defendant points to several out-of-state cases in support of the position that "[n]o rational trier of
fact could conclude that Plaintiffs' unequivocal refusal to construct an access road could be
considered reasonable."  (Docket 47 at 5.)  Most of the cases Defendant cites involve a court
implying a requirement of reasonable action where a party withheld consent pursuant to a contract,
with no discussion of summary judgment or determining reasonableness as a matter of law.  As the
addendum here *expressly* requires that Plaintiffs not withhold consent "unreasonably," it is both
inapposite and unhelpful to focus on cases that merely imply such a provision in a contract without
any further comment. There is no question here whether a reasonableness standard applies; as
framed by the parties, the question is whether Plaintiffs *in fact* acted reasonably.  Indeed, to the
extent these cases are even relevant, they undermine the point Defendant is attempting to make. *See,
e.g.*, *Fernandez v. Vazquez*, 397 So. 2d 1171, 1174 (Fla. App. 1981) (reversing grant of summary
judgment and holding that "[w]hether a landlord breached the lease by acting unreasonably in
withholding consent of a commercial tenant is to be determined by a jury according to the facts of
that case.").

Based on the information in the record to date, reasonable minds could differ as to whether

Defendant had "lawful authority" under the lease to construct the access road on Plaintiffs' property.

Thus, Defendant's motion for summary judgment as to Plaintiffs' trespass claim is **DENIED**.

### B.	Intentional Infliction of Emotional Distress

In order to establish a claim for intentional infliction of emotional distress ("IIED"), a

plaintiff must show the following:

> (1) [T]hat the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Laboratories, Inc.*, 504 S.E.2d 419 (W. Va. 1998).  Defendant claims that

Plaintiffs have failed to allege sufficient facts, even when taken as true, to establish the necessary

elements of this claim.

To establish the first element, Plaintiff must show that the conduct complained of is "so

outrageous in character, and so extreme in degree, as to go *beyond all possible bounds of decency*,

and to be regarded as *atrocious and utterly intolerable in a civilized society.*" *Keyes v. Keyes*, 392

S.E.2d 693, 696 (W. Va. 1990) (emphasis in original) (quoting *Harless v. First National Bank in

Fairmont*, 289 S.E.2d 692, 703-04 n.20 (W. Va. 1982)).  In more colloquial terms, a plaintiff must

allege conduct that would lead the average member of society to exclaim, "Outrageous!"

*McCammon v. Oldaker*,  516 S.E.2d 38, 46 (W. Va. 1999) (quoting *Tanner v. Rite Aid of W.Va.,

Inc.*, 461 S.E.2d 149, 157 (W. Va. 1995)).  In evaluating a motion for summary judgment on this

element, the Court's role is to determine the "legal question" of "whether the defendant's conduct

may *reasonably be regarded* as so extreme and outrageous as to constitute the intentional or reckless

8

infliction of emotional distress." Syl. Pt. 8, *Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395 (W. Va. 2008) (emphasis added) (quoting Syl. Pt. 4, *Travis*, 504 S.E.2d 419).

Plaintiffs rest their IIED claim solely on the theory that Defendant's construction of the road over their objection constitutes "outrageous" conduct. Notably, Plaintiffs do not argue that the actual *construction* of the road was, in and of itself, outrageous, nor that Defendants otherwise acted in an outrageous manner; indeed, Plaintiffs state that, "[w]ere it not for the addendum to the oil and gas lease, Plaintiffs would be the first to admit that the conduct of Cabot was not outrageous." (Docket 45 at 8.) As such, Plaintiffs' claim is not so much that Defendant's *conduct itself* was outrageous, but that such conduct *becomes* outrageous when viewed in the context of the violation of Plaintiffs' legal rights.

It is well-established that "conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct." *Courtney v. Courtney*, 413 S.E.2d 418, 423 (W. Va. 1991) (footnote omitted). At most, Plaintiffs have alleged facts that, when taken as true, would tend to show that Defendant's action in constructing the road was "harmful of [their] rights or expectations." *Id.* As noted above, Plaintiffs themselves have specifically averred that Defendant's conduct was not otherwise outrageous. An unlawful trespassory act, devoid of any allegations of outrageousness beyond the tortious conduct that is inherent in such activity, cannot serve as an adequate basis for a claim of IIED. As described by the Supreme Court of Appeals of West Virginia:

> *It has not been enough* [to establish liability for IIED] *that the defendant has acted with an intent that is tortious or even criminal*, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible

9

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Tanner v. Rite Aid of West Virginia, Inc*., 461 S.E.2d 149, 156-57 (W. Va.1995) (emphasis added) (quoting Restatement (Second) of Torts, § 46, cmt. (d) (1965)).  Plaintiffs have provided no evidence that Defendant's allegedly trespassory activities were somehow extreme, going beyond "all possible bounds of decency" and constituting conduct that is "utterly intolerable in a civilized community." *Id.*  As Defendant's conduct cannot reasonably be regarded as sufficiently outrageous for the purposes of establishing IIED, the Court's analysis of this claim need not proceed further. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment with respect to Plaintiffs' claim for intentional infliction of emotional distress.

## *IV. CONCLUSION*

For the reasons stated above, Defendant's motion for summary judgment [Docket 43] is **DENIED** as to Plaintiffs' claim of trespass, and **GRANTED** as to Plaintiffs' claim of intentional infliction of emotional distress.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        April 19, 2011

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE